IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**

        **Plaintiff,**

vs.                                                        **Civil No. 07-0300 JAP/LFG**

**WAL-MART STORES, INC. and**
**WAL-MART STORES EAST, INC.,**

        **Defendants.**


## MEMORANDUM OPINION AND ORDER

On May 29, 2009, Defendants filed Defendants' Motion for Summary Judgment ("MSJ") (Doc. No. 72); on July 10, 2009, Plaintiff filed Plaintiff EEOC's Response in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 82); on July 27, 2009, Plaintiff filed Notice of Errata to Plaintiff Equal Employment Opportunity Commission's Response in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 83); on August 3, 2009, Defendants filed Defendants' Reply in Support of their Motion for Summary Judgment (Doc. No. 84); and on September 1, 2009, with the Court's permission, Plaintiff filed Plaintiff EEOC's Surreply Regarding Defendants' Motion for Summary Judgment (Doc. No. 89). Having reviewed the MSJ, the parties's submissions, and the relevant law, the Court concludes that the MSJ should be **DENIED**.

## I.  Background

The underlying facts of this case are set forth in detail in the Court's July 17, 2008 Memorandum Opinion and Order (Doc. No. 27). The Court will therefore focus only on those facts relevant to the MSJ.

## II.  Standard of Review

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of its pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

## III.  Discussion

### A.  Defendants' Request to Strike Certain of Plaintiff's Exhibits

As a preliminary matter, the Court will address Defendants' argument that "Plaintiff's alleged 'fact disputes' derive from its reliance on the 18 unauthenticated documents it submitted with its [response]."  Defs.' Reply at 2.  Defendants contend the "unauthenticated documents" should be stricken.  Defendants cite to Rule 901of the Federal Rules of Evidence in support of their argument that the Court cannot consider any of the eighteen unauthenticated documents in ruling on the MSJ.  The eighteen exhibits challenged by Defendants are Plaintiff's Exhibits 1, 2, 10, 11-21, 24-26 and 28.

Defendants also request that the Court strike Plaintiff's Exhibit 27, an affidavit by Georgia Marchbanks, the Area Director for the EEOC's Albuquerque Office. In her affidavit, Ms. Marchbanks attests she is familiar with the EEOC's office records and investigative files and "certif[ies] the below [18] listed exhibits are true and correct copies of documents from the investigative files for Charges filed . . . by Robin Bradford and John Bradford against Wal-Mart Stores, Inc." Pl.'s Resp. Opp'n Defs.' Mot. Summ. J.; Ex. 27, Marchbanks Aff. ¶¶1, 2. Defendants argue Ms. Marchbanks's affidavit is Plaintiff's "unsuccessful attempt to authenticate the 18 challenged documents." Defs.' Reply at 2. According to Defendants, Ms. Marchbanks's affidavit does not assert she has any personal knowledge regarding the facts contained in the eighteen documents.

As to Exhibits 10 and 25, which are Wal-Mart's position statements, Defendants contend they are not admissible evidence. Defendants argue Plaintiff improperly "altered" the first page of the position statements by redacting Wal-Mart's footnotes which explicitly stated that the position statements were not "intended to be used as evidence of any kind in any . . . court proceeding in connection with Complainant's allegations." Hence, Defendants argue Wal-Mart submitted its position statements after its preliminary investigation and included a footnote specifically stating that the position statements were not intended to be admissible evidence. Therefore, Defendants contend the Court should strike Exhibits 10 and 25

Plaintiff counters it properly submitted Wal-Mart's position statements in a redacted form to bring to the Court's attention only the language relevant to the issue of pretext. Additionally, Plaintiff contends it is the function of the Court to determine the admissibility of evidence.

The Court agrees. Plaintiff properly submitted Wal-Mart's position statements and indicated the statements were redacted. Pl.'s Resp. in Opp'n Defs.' Mot. Summ. J.; Ex. 27,

Marchbanks Aff.  Moreover, under Federal Rule of Evidence 104(a), "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court . . . ."  Accordingly, the Court will not strike Plaintiff's Exhibits 10 and 25 on the ground advanced by Defendants.

"While the party opposing summary judgment need not produce evidence in the form that would be admissible at trial, the content or substance of the evidence must be admissible."  *Law Company, Inc. v. Mohawk Construction and Supply Co.*, – F.3d – , 2009 WL 2488140 (10th Cir. 2009).  In *Law Company, Inc.*, the Tenth Circuit noted:

> We do not require an affidavit to authenticate every document submitted for consideration at summary judgment.  Rather, documents produced during discovery that are on the letterhead of the opposing, producing party are authentic per se for purposes of Federal Rule of Evidence 901.  Accordingly, the district court abused its discretion when it refused to consider numerous letters, facsimiles, and memoranda attached to Mohawk's opposition that were printed on Law letterhead and produced by Law.

2009 WL 2488140 at *4 (internal citations omitted).

Plaintiff's Exhibits 11-15 and 17-21 are documents Wal-Mart produced during discovery and are thus authentic per se for purposes of Rule 901.  Plaintiff's Exhibits 1, 2 and 24 are EEOC documents Ms. Marchbanks authored and signed.  Plaintiff's Exhibit 16 is the EEOC Investigator Interview of Yolanda Houston and Plaintiff's Exhibit 28 is the EEOC Investigator Interview of Rita Boylan.  The content or substance of Plaintiff's Exhibits 1, 2, 10, 16, 18, 24, 25, 26 and 28 would be admissible.  Accordingly, Defendants' request to strike Plaintiff's Exhibits 1, 2, 10, 11-21, 24-27 and 28 is denied.

### B.  Failure to Exhaust Administrative Remedies

Defendants contend Ramona Kay Bradford failed to exhaust her administrative remedies because she did not file a charge claiming retaliation based on Wal-Mart not hiring her children,

Robin and John Bradford. "Exhaustion of administrative remedies is a 'jurisdictional prerequisite' to suit under Title VII." *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir.1996). "A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005).

As Plaintiff points out, the Court has already addressed this issue in its July 17, 2008 Memorandum Opinion and Order (Doc. No. 27). In that opinion, the Court found:

> The Amended Complaint outlines the relationship of Ramona Kay Bradford's claims to the charges made by her children. The children's 2005 charges assert that Wal-Mart retaliated against them and their mother in response to their mother's protected activity. The EEOC's investigation of the charges; therefore, would necessarily include an examination of Ramona Kay Bradford's protected activity. In the Letters of Determination, the EEOC clearly notified Wal-Mart that it considered retaliation against closely related persons a violation of Title VII and that retaliation against a close relative of an individual who opposed discrimination can be challenged by both the individual who engaged in protected activity and the relative. The EEOC's Letter of Determination included a finding of discrimination as to Ramona Kay Bradford personally. And, the EEOC engaged in conciliation efforts on behalf of all three plaintiffs.
>
> <u>Wal-Mart provides no basis for its assertion that it had no notice of the EEOC's claim on behalf of Ramona Kay Bradford before the Complaint was filed in this action. Neither does Wal-Mart provide a basis for arguing that the EEOC failed to attempt conciliation on behalf of Ramona Kay Bradford. The charges filed by Robin and John Bradford and the EEOC Letters of Determination gave notice to Wal-Mart of Ramona Kay Bradford's claim of retaliation and thereby afforded the EEOC and Wal-Mart an opportunity to conciliate the claim. Thus, the purposes of the exhaustion requirements have been met with regard to Ramona Kay Bradford's claims. The Court finds that the EEOC did not fail to exhaust administrative remedies with respect to Ramon Kay Bradford's retaliation claim</u>.

Mem. Op. at 13-14 (internal citations omitted)(emphasis added).

Defendants also argue the Court should dismiss John Bradford's EEOC charge because it was not a valid charge. In support of their argument, Defendants claim John Bradford admitted he did not sign the charge and he has no evidence to support the allegations set forth in the charge. *See* Defs.' Mot. Summ. J.; Ex. 8, John Bradford Dep. at p. 46, lines 5-16. Moreover, Defendants

contend the EEOC investigator told John Bradford the facts supporting his charge.  *Id*., John Bradford Dep. at p. 47, lines 1-19.

Plaintiff submitted an affidavit from John Bradford clarifying his deposition testimony. [1] Pl.'s Resp. in Opp'n Defs.' Mot. Summ. J.; Ex. 22, John Bradford Aff.  In his affidavit, John Bradford attests that on **May 9, 2005**, he went to the EEOC office with his mother and sister to file a charge of discrimination against Wal-Mart.  *Id.*, John Bradford Aff. ¶¶2, 3.  John Bradford also attests that, although the charge does not have his signature, he gave his mother permission to sign the charge on his behalf.  *Id*., John Bradford Aff. ¶5.

As to Defendants' claim that an EEOC investigator told John Bradford the facts supporting his charge, Plaintiff presented evidence to refute this claim.  John Bradford's deposition testimony indicates that in response to the question regarding what support he had for his EEOC charge, he testified he heard "that somebody with the same O'Ryan (sic: ORION) score was hired besides me."  Defs.' Ex. 8; John Bradford Dep. at p. 47, lines 11-12.  In response to further questioning, John Bradford testified that before he filed his charge, an EEOC investigator told him Wal-Mart had hired somebody with the same ORION scores as his.  *Id.*, John Bradford Dep. at p. 48, lines 3-16.

---

[1] Defendants contend the Court should strike John Bradford's Affidavit because it directly contradicts his sworn deposition testimony and attempts to create a sham factual issue.  Defs.' Reply at 4.  "Factors relevant to the existence of a sham fact issue include whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain."  *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986).  The Court will not strike John Bradford's Affidavit as it seeks to explain his earlier testimony.  In his deposition testimony, John Bradford testified he remembered signing a document similar to the EEOC charge but was not certain.  Defs.' Mot. Summ. J.; Ex. 8, John Bradford Dep. at p. 46, lines 5-16.  Although he testified the signature on his EEOC charge was not his, he explains in his affidavit why his signature does not appear on his EEOC charge.

Plaintiff submitted evidence showing it did not have information regarding the ORION tests related to John Bradford's claims until after John filed his charge and after the EEOC served the charge on Wal-Mart. Pl.'s Resp. Opp'n Defs.' Mot. Summ. J. at 17 n.6. Moreover, it was not until **July 17, 2006**, that Defendants submitted to the EEOC the ORION test information. *Id.*, Ex. 26. Therefore, John Bradford's testimony that an EEOC investigator told him "somebody with the same ORION score was hired" appears to be incorrect. Considering that John Bradford was deposed on **April 27, 2009**, it is understandable that he did not recall when he learned about the Orion scores or who provided the information. Nonetheless, even if the Court were to dismiss John Bradford's charge, Robin Bradford's charge is sufficient to exhaust Ramona Kay Bradford's administrative remedies.

### C.  Plaintiff's Claim of Retaliation

Plaintiff relies on circumstantial evidence to prove the retaliation claim. Thus, Plaintiff's Title VII retaliation claim is analyzed under the burden-shifting process of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). Under *McDonnell Douglas*, the plaintiff has the initial burden of establishing a prima facie case of retaliation. *Id.* at 802, 93 S.Ct. 1817. However, the "burden of establishing a prima facie case . . . by a preponderance of the evidence" is "not onerous." *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005)(quoting *McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 922 (10th Cir. 2001)). Moreover, "[t]his burden is one of production, not persuasion; it can involve no credibility assessment." *Id.* (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, (2000)). If Plaintiff establishes its prima facie case, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1229 (10th Cir.2004). If Defendants meet this burden, then summary judgment is warranted unless

7

Plaintiff can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual.  *Plotke*, 273 F.3d at 1099.

To establish a prima facie case of retaliation, Plaintiff must show that: (1) Ramona Kay Bradford engaged in protected opposition to discrimination; (2) Ramona Kay Bradford suffered an adverse action that a reasonable employee would have found material; and (3) there is a causal nexus between her opposition and/or participation and Defendants' adverse action.  *Montes v. Vail Clinic, Inc*., 497 F.3d 1160, 1176 (10th Cir.2007).  The Supreme Court has explained that the second prong requires a showing "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (quotations omitted).  This standard focuses on the employer's retaliatory action, not the underlying discrimination the employee has opposed.  *Id.* at 69-70, 126 S.Ct. 2405.  This standard prescribes an objective inquiry that does not turn on a plaintiff's personal feelings about the particular circumstances of the case.  *Id*. at 68, 126 S.Ct. 2405.  Accordingly, a case  is "judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* at 71, 126 S.Ct. 2405 (quotations omitted).

Defendants contend Plaintiff cannot establish a prima facie case of retaliation on behalf of Ramona Kay Bradford.  First, Defendants claim Plaintiff cannot establish that Wal-Mart took any materially adverse action against Ramona Kay Bradford.  Second, Defendants claim Plaintiff cannot establish a causal connection between Ramon Kay Bradford's August 2004 Charge and Wal-Mart's decision not to hire her children.

**1.  Materially Adverse Action**

In *Burlington*, the Supreme Court found a challenged action materially adverse if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." 548 U.S. 53, 68, 126 S.Ct. 2405, 2414-15 (quotation omitted). Plaintiff argues that in the type of workplace such as Wal-Mart "where many family members are employed and young employees seek entry-level positions, employees would be deterred from filing charges of discrimination or opposing discrimination if the risk of family members losing out on employment opportunities exists." Pl.'s Resp. Opp'n Defs.' Mot. Summ. J. at 19. The Court agrees. A reasonable person in Ramon Kay Bradford's position might be dissuaded from opposing discrimination or filing a charge of discrimination if that person believed a family member would not be employed .

**2.  Causal Connection**

"To establish that a causal connection exists" between the filing of Ramona Kay Bradford's August 2004 Charge and Wal-Mart's decision not to hire her children, Plaintiff "may proffer 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *Proctor v. United Parcel Service*, 502 F.3d 1200, 1208 (10th Cir. 2007)(quoting *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006)). "However, unless the [decision not to hire Robin and John Bradford] is very closely connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." *Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir. 2007). The Tenth Circuit has considered evidence of pretext in analyzing the causation element of a prima facie case of retaliation under Title VII. *See e.g. Proctor,* 502 F.3d at 1209; *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1218 (10th Cir. 2003).

Plaintiff contends it can establish the third element of its prima facie claim of retaliation as to Robin Bradford on the basis of temporal proximity between Ramona Kay Bradford filing her

2004 Charge and Wal-Mart's decision not to hire Robin Bradford. Plaintiff contends Ramona Kay Bradford filed her Charge in August 2004 and Robin Bradford applied for employment with Wal-Mart on October 4, 2004, and Mr. Thomas Bierle interviewed her on October 29, 2004. Furthermore, Plaintiff contends Robin Bradford never heard from Wal-Mart after her October 29th interview even though Mr. Bierle recommended her for a second interview, and Wal-Mart hired associates during the months of October and November 2004. Plaintiff asserts this temporal proximity between the two events is sufficient to justify an inference of retaliatory motive.

Defendants counter that Plaintiff cannot establish a causal connection because Ryan Donnell and Yolanda Houston, the only two individuals with knowledge of Ramona Kay Bradford's August 2004 Charge, had no involvement in the decision not to hire her children and did not even know they had applied. However, Plaintiff has presented evidence that other individuals at Wal-Mart knew of Ramona Kay Bradford's August 2004 Charge. Pl.'s Resp. Opp'n Defs.' Mot. Summ. J.; Ex. 23 (Ramona Kay Bradford Aff. ¶¶5,6; Ex. 28 (EEOC Investigator Interview of Rita Boylan). Ramona Kay Bradford also testified that management treated her differently after she filed her August 2004 Charge. *Id.*; Ex. 23 (Ramona Kay Bradford Aff. ¶6).

Moreover, Plaintiff contends Ms. Houston could not be removed from hiring decisions, including the decision not to hire John and Robin Bradford, because she supervised Wal-Mart's personnel department where all hiring decisions were made. As to Mr. Donnell, the store manager and Ms. Houston's immediate supervisor, Plaintiff argues he also was not removed from hiring decisions. Based on the evidence presented, Plaintiff has met its burden, which is not onerous, of establishing the third element of its prima facie claim of retaliation as to Robin Bradford.

In regard to John Bradford, Defendants established that he was interviewed in January 2005. Because a six-month period does not support an inference of retaliatory motive, Plaintiff

contends it can otherwise establish causation with evidence that demonstrates the weakness of Wal-Mart's proffered reason for not hiring him.  Pl.'s Resp. Opp'n Defs.' Mot. Summ. J. at 20-21. As noted above, the Court can consider evidence of pretext at the prima facie stage of a retaliation claim.  *See Wells v. Colo. Dep't of Transp.*, 325 F.3d at 1218 (considering evidence of pretext in analyzing the causation element of a prima facie case of retaliation under Title VII).

Defendants proffer the following legitimate, non-retaliatory reasons for not hiring Robin and John Bradford: (1) Wal-Mart had a hiring freeze in place at the time Robin and John were interviewed; and (2) Robin and John were not ideal candidates for employment and thus did not make it to the second round of interviews.   Defs.' Mot. Summ. J. at 13.  Defendants contend Wal-Mart did not consider Robin for a second interview because of her unavailability on Tuesdays and Thursdays and her limited availability on Sundays.  Defendants further contend Wal-Mart did not consider John for a second interview because his ORION test scores indicated a "High Risk in Workplace Theft Attitudes."

Plaintiff argues "Defendants' proffered reasons for not hiring Robin and John Bradford are unworthy of belief" and therefore pretext for retaliation.  Pl.'s Resp. Opp'n Defs.' Mot. Summ. J. at 22.  To establish pretext, Plaintiff must present "evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."  *Proctor*, 502 F.3d at 1209 (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc*, 452 F.3d 1193, 1203 (10th Cir. 2006)).

As evidence of pretext, Plaintiff contends Robin Bradford's availability was not a problem. Mr. Donnell, the individual responsible for "total operations of the store," testified it was at the

11

first interview that the hourly supervisor inquired about availability.  Pl.'s Resp. Opp'n Defs.' Mot. Summ. J.; Ex. 6, Donnell Dep. p. 36, lines 3-17.  Mr. Donnell testified this was common practice because Wal-Mart employed "people that may have another job, and they may need to work around that, or child-care issues, or their spouse's work schedule, or whatever." *Id.*, Donnell Dep. p. 34, lines 5-8.  Mr. Donnell explained it saved time to inquire about availability at the first interview because "if somebody does well during their first interview, but they can't work a specific needed shift, if you didn't discuss that during the first, we would need to go into the second interview, and that would make us spend a lot of time that's just not needed because we couldn't use that applicant for that position."  *Id.*, Donnell Dep. p. 36, lines 11-17.

According to Plaintiff, Thomas Bierle, an hourly supervisor, interviewed Robin on October 29, 2004, for a snack bar position.  At that interview, Robin and Mr. Bierle discussed her availability, which was 74 hours per week.  Moreover, Plaintiff claims Mr. Bierle helped Robin fill out her availability sheet and gave her the times she would be working.  *See* Pl.'s Resp. Opp'n Defs.' Mot. Summ. J., Ex. 3-1.  At the conclusion of the interview, Mr. Bierle recommended Robin for a second interview, and he told Robin he would have Moises call her to let her know when she could start working.  *See Id.*, Ex. 1 (Mr. Bierle's Interview Comment Sheet for Robin Bradford, recommending a second interview with a salaried manager); Ex. 8, Bierle Dep. at p. 25, lines 4-9.  Mr. Bierle testified he was not aware of any instance where he recommended an applicant for an interview by a salaried manager and the applicant was not interviewed.  *Id.*  Mr. Bierle also had no personal knowledge as to the reason why Robin Bradford was not hired.  Pl.'s Resp. Opp'n Defs.' Mot. Summ. J.; Ex. 8, Bierle Dep. at p. 27, lines 9-12.

Robin never received a call from Moises.  After Moises left Wal-Mart, Ramona Kay Bradford went to the new manager regarding Robin's application.  The new manager informed

Ramona he did not know anything about Robin's application but would ask Mr. Donnell and let Ramona know.  Ramona never heard from the new manager or Mr. Donnell.

Robin then applied for a fitting room position at Wal-Mart.  Valerie, the Soft Lines Manager, told Ramona there was an opening in soft lines.  Valerie informed Ramona they were hiring and directed Ramona to have Robin come in.  Robin went in for her scheduled interview with Valerie and waited for two hours.  Robin learned Valerie was unavailable and was told to come back another time.  Afterward, Ramona asked Valerie when Robin would be rescheduled.  However, Valerie never rescheduled the interview.  Wal-Mart never notified Robin as to why she was not hired.  Plaintiff contends this was contrary to Wal-Mart's policy and additional evidence of pretext.

Furthermore, Plaintiff contends Wal-Mart hired other individuals with less availability during key work shifts when the store experiences high customer numbers.  Plaintiff presented evidence that Wal-Mart hired Lance Breaux on October 15, 2004.  Pl.'s Resp. Opp'n Defs.' Mot. Summ. J.; Ex. 14 & Ex. 20.  Mr. Breaux's availability was from midnight to 7:00 a.m., Sunday to Saturday.  *Id.*  Wal-Mart also hired Kathleen Deeshchiinii on November 12, 2004.  Pl.'s Resp. Opp'n Defs.' Mot. Summ. J.; Ex. 14 & 21.  Ms. Deeshchiinii's availability was 48 hours per week.

Plaintiff also contends Wal-Mart's proffered reason for not hiring John Bradford is pretextual.  Plaintiff asserts that Wal-Mart hired Thomas Harris on October 15, 2004, even though his ORION scores indicated a "High Risk in Workplace Theft Attitudes" and Harris admitted he had stolen small items in previous jobs.  Additionally, Wal-Mart hired Abel Pacheco even though his ORION scores also indicated a "High Risk in Workplace Theft Attitudes," and he also admitted he had stolen small items in previous jobs.  Although John Bradford's ORION score

indicated a "High Risk in Workplace Theft Attitudes" he had not stolen anything in previous jobs, yet he was not hired.

Defendants dispute Plaintiff's assertion that John Bradford actually had a second interview. Defendants contend John did not receive a second interview because of his ORION scores. However, Plaintiff argues that ORION scores were discussed during the second interview, not the first interview. Mr. Bierle testified he had no need to review ORION scores at the first interview. Pl.'s Resp. Opp'n Defs.' Mot. Summ. J., Bierle Dep. p. 26, lines 22-23, p. 27, lines 4-8. Mr. Donnell also testified it was the "second interview manager" who discussed concerns regarding ORION scores. *Id*., Donnell Dep. p. 37, lines 18-23. Mr. Donnell also testified it was rare, but possible, for an applicant with questionable ORION scores to receive a job offer. *Id.*, Donnell Dep. p. 37, lines 23-25, p. 38, lines 1-8. Mr. Donnell explained the second interview manager inquired about ORION scores because Wal-Mart was careful not to disqualify someone who had "literacy problems" or "language barriers" or just "misread the question." *Id.,* Donnell Dep. p. 38, lines 2-8. Thus, Plaintiff argues, if Wal-Mart followed its normal hiring procedure, John Bradford, in fact, had a second interview. Plaintiff also submitted Ramon Kay Bradford's affidavit in which Ramona attests John had a second interview. *Id*., Ramona Kay Bradford Aff. ¶¶3, 4.

Finally, Plaintiff contends that Wal-Mart's proferred reason for not hiring Robin or John because a hiring freeze was in place when they interviewed is pretextual. Rita Vigneau, a Wal-Mart file clerk in personnel, testified she had no recollection of a hiring freeze being in place in October or November 2004. Pl.'s Resp. Opp'n Defs.' Mot. Summ. J., Ex. 7, Vigneau Dep. p. 43, lines 14-17. Mr. Bierle also had no recollection of a hiring freeze in late 2004. *Id.*, Ex. 8, Bierle Dep. p. 29, lines 1-4. Plaintiff contends it is not credible that Wal-Mart would be conducting first and second interviews when it had a hiring freeze.

Mr. Donnell testified he had "a real specific recall on the regional directive that came down about the second, third week in October, and put every store on a hiring freeze." Defs.' Mot. Summ. J., Ex. 6, Donnell Dep. p. 26, lines 8-11. Mr. Donnell testified the directive came via a "conference call" and thus there was nothing in writing that memorialized the directive. *Id.* Mr. Donnell also testified Wal-Mart would not continue interviewing after he was notified of the hiring freeze because "[i]t would be a waste of time. " *Id.*, Donnell Dep. p. 27, lines 22-25, p. 27, line 1. However, Defendants concede John Bradford was interviewed on January 2005. Defs.' Mot. Summ. J. at 12. Additionally, Plaintiff submitted evidence showing Wal-Mart hired other individuals after the hiring freeze. Pl.'s Resp. Opp'n Defs.' Mot. Summ. J., Ex. 14 (Wal-Mart's New Hire List). Wal-Mart hired individuals in late October, November, and December of 2004, and January, February, and March of 2005. *Id.* Wal-Mart contends, without citing to evidence of record, that the individuals hired after the hiring freeze were individuals to whom Wal-Mart had extended job offers before the hiring freeze, but who had not yet been cleared due to the time it takes to get background checks and drug test results. This argument fails because it is not based on evidence in the record.

Based on the evidence presented, the Court finds that Plaintiff has met its burden of establishing its prima facie case and Plaintiff has raised genuine issues of material fact regarding the third step of the *McDonnell Douglas* framework, i.e., whether Defendants' proffered reasons are pretext for retaliation. Accordingly, Defendants' motion for summary judgment will be denied.     **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 72) is **DENIED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**