# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW MEXICO

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**

     **Plaintiff,**

**v.**                            **Case No. 07-CV-0300 JAP/LFG**

**WAL-MART ASSOCIATES, INC. and WAL-MART STORES EAST, L.P.,**

     **Defendants.**

# MEMORANDUM OPINION AND ORDER
# DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 140)

In DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 140) (the Motion), Wal-Mart Associates, Inc. and Wal-Mart Stores East, L.P. (together, Wal-Mart) ask the Court to dismiss the claims brought by the Equal Employment Opportunity Commission (EEOC) on behalf of Robin and John Bradford. Wal-Mart contends that Robin and John Bradford do not have standing to sue Wal-Mart for failing to hire them in retaliation for the protected activity of their mother, Ramona Bradford, a former Wal-Mart employee.[1] Under the reasoning of *Thompson v. North American Stainless Steel, LP*, 131 S. Ct. 863 (2011), the Court concludes that Robin and John Bradford do have standing to assert claims under Title VII for retaliation based

---

[1] On August 26, 2011, Wal-Mart filed DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 140) and MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 141). On September 19, 2011, Plaintiff EEOC filed PLAINTIFF EEOC'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 148). On October 10, 2011, Wal-Mart filed DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (Doc. No. 158).

on their mother's protected activity. In addition, the EEOC, on behalf of Robin and John

Bradford, has established a *prima facie* case of retaliation, and even though Wal-Mart has

proffered legitimate reasons for not hiring Robin and John Bradford, the EEOC has raised a

genuine dispute regarding whether those reasons could be a pretext for retaliation. Thus, the

Court will deny the Motion.

STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56 (a).[2]  The movant bears the initial burden to show the absence of a genuine issue or dispute of

material fact entitling the movant to judgment as a matter of law. *Libertarian Party of NM v.*

*Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986)).  If the movant meets this initial burden, the burden then shifts to the non-movant to

show "that the materials cited do not establish the absence of a genuine dispute[.]" Fed. R. Civ.

P. 56(c)(1)(B).  A genuine dispute is one that "can be resolved only by a finder of fact because

[it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 250 (1986).  Both the movant and non-movant must support their contentions by

"citing to  particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those made

for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed.

---

[2] Amendments to Fed. R. Civ. P. 56 became effective on December 1, 2010. The frequently cited standard for summary judgment is now in Rule 56(a), rather than Rule 56(c). Although the wording of the standard has changed slightly, i.e., the word "issue" was replaced with the word "dispute," the change does not affect the substantive standard or the applicability of prior decisions construing the standard. Fed. R. Civ. P. 56 Advisory Committee Notes.

R. Civ. P. 56(c)(1)(A).  If a party fails to properly support an assertion of disputed fact or fails to properly address another party's assertion of disputed fact as required by Rule 56 (c), the court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.  Fed. R. Civ. P. 56(e).

In addressing the Motion, the court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Asbury v. Geren*, 582 F. Supp. 2d 1323, 1327 (D.N.M. 2008) (quoting *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir.1999)). In sum, the court must ultimately determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Gamez v. Country Cottage Care & Rehab.*, 377 F. Supp. 2d 1103, 1115 (D. N.M. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251-52).

## BACKGROUND

On March 28, 2007, the EEOC brought this action on behalf of Ramona, Robin, and John Bradford under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e-3(a) and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981. In its First Amended Complaint (Doc. No. 21), the EEOC alleged that Wal-Mart retaliated against Ramona Bradford, a Wal-Mart employee, and her adult children, Robin and John Bradford, by denying Robin and John Bradford the opportunity to proceed in the hiring process and by refusing to hire them in retaliation for Ramona Bradford's protected activity.

According to the undisputed facts, Wal-Mart hired Ramona Bradford on August 16, 2003

3

as a cashier in the Wal-Mart Store #835 in Albuquerque, New Mexico. In August 2004, Ramona Bradford filed a Charge against Wal-Mart in which Ramona Bradford alleged that she was sexually harassed by a fellow employee. In October 2004, the parties mediated Ramona Bradford's Charge resulting in an agreement that Wal-Mart pay compensation to Ramona Bradford. On October 4, 2004, Ramona Bradford's adult daughter, Robin Bradford, applied for employment at the same Wal-Mart store. Before discussing the circumstances of Robin Bradford's application for employment at Wal-Mart, the Court will briefly describe Wal-Mart employment process.

### A. WAL-MART'S EMPLOYMENT APPLICATION PROCESS

In 2004, Wal-Mart accepted job applications electronically. A member of Wal-Mart's personnel staff would then download applications from the computer system and would review the applications noting the applicants' hours of availability, ORION test scores,[3] and work history. An applicant who met the basic qualifications was then given an initial interview with an hourly supervisor who had access to all of the information on the applicant's application. After the initial interview, the interviewer would record a recommendation on an interview sheet for later review. If an applicant received a favorable recommendation, a Manager would interview the applicant. At the second interview, the Manager would usually discuss hours of availability and any concerns regarding an applicant's ORION test scores. If the applicant was successful in the second interview, the applicant would receive a conditional job offer. In the conditional job offer, Wal-Mart would require the applicant to submit to a drug test and a background check before the applicant could start work. If an applicant was unsuccessful in the second interview,

---

[3] The ORION test was given to each applicant and measured, among other things, an applicant's attitude toward workplace theft.

the Manager would inform the applicant that the applicant was not being considered for employment but that the application would remain on file for 60 days. After 60 days, the applicant would have to re-submit an application if the applicant wanted to continue to apply for employment at Wal-Mart.  (Resp. Ex. 9.)

In 2004, Ryan Donnell was the Store Manager of the Wal-Mart Store # 835. Mr. Donnell oversaw all the associates to ensure compliance with Wal-Mart's policies and procedures. (Ryan Donnell Dep. 12:5-7, 23-25.) Yolanda Houston was the personnel or "people" manager at the Wal-Mart store. Ms. Houston conducted audits regarding personnel decisions to ensure that they were in keeping with Wal-Mart's policies and procedures. (Interview of Yolanda Houston 9:8-25, 10:1-2.) Ms. Houston reported directly to Mr. Donnell (*Id.* 6:13-15.) Ms. Houston supervised the personnel department, which was responsible for all job offers to applicants. (Donnell Dep. 45:23-25, 46:1-7)  Wal-Mart Store #835 was open for business 24 hours per day and 7 days per week.

### B. ROBIN BRADFORD'S APPLICATION FOR EMPLOYMENT AT WAL-MART

On October 4, 2004, two months after Ramona Bradford filed her Charge of sexual harassment, Ramona Bradford's adult daughter, Robin Bradford, applied for a cashier/snack bar position at Wal-Mart Store # 835. Sometime in October 2004, Ramona Bradford mediated her Charge of sexual harassment with Wal Mart.[4] In response to a question in the application, Robin Bradford stated that she was the daughter of a Wal-Mart employee, Ramona Bradford. On her "Availability Sheet," Robin Bradford indicated that she was a student and was unavailable to

---

[4] The record shows that the mediation of Ramona Bradford's Charge occurred "during the month of October 2004," but the record does not show whether Robin Bradford's October 4, 2004 application for employment was submitted before or after the mediation of Ramona Bradford's Charge.

work on Tuesdays and Thursdays and before 3:00 pm on Sundays. Robin Bradford indicated that she was available to work all other hours, which totaled 74 hours per week of "availability."

Robin Bradford was called in for an initial interview, which was held on October 29, 2004 with an hourly manager Thomas Beierle.  After the interview, Mr. Beierle recommended Robin for a second interview. (Beierle Dep. 25:4-9.)[5]  However, neither the snack bar manager nor any other manager called Robin Bradford for a second interview.

Mr. Beierle testified that he did not know why Robin Bradford was not hired for the position. (*Id.* 27:9-12.) [6]  Contrary to Wal-Mart policy, Robin Bradford was not contacted by anyone at Wal-Mart to inform her whether she would be hired or whether her application would stay on file for 60 days. Wal-Mart asserts that Robin Bradford was not hired because she did not have sufficient hours of availability. However, Mr. Beierle testified that in the initial interview, he would not usually discuss an applicant's hours of availability:

> Q: . . . And the fact that there were–would be two days a week that they might not be able to work, would that be a problem, in your opinion?
> A. No, because it's not really–that's not really up to me.

---

[5] Plaintiff presented the testimony of Robin Bradford stating that at the interview, Mr. Beierle told her that she had to "talk to [Snack Bar Manager] Moasis after the interview and that he'd give [Robin] a call," presumably to set up a second interview. (Robin Bradford Dep. 26:12-14.) According to Robin Bradford, Mr. Beierle told her that he "would have him [Moasis] call [Robin] and let [Robin] know when [she] could start." (*Id.* 27:1-2.) However, Wal-Mart contends that this evidence is inadmissible hearsay and cannot be used to support a denial of summary judgment. Fed. R. Civ. P. 56(c)(1)(B) (stating that a party seeking summary judgment may dispute the assertion of a fact issue by arguing that the adverse party "cannot produce admissible evidence to support the fact."); Fed. R. Evid. 801(c). The Court agrees and has not considered these statements by Robin Bradford in making this decision.

[6] Plaintiff also submitted the testimony of Ramona Bradford in which she testified that she talked to the new snack bar manager and that the new manager indicated that he did not know anything about Robin's application, but that he would speak to the store manager, Ryan Donnell and "let Ramona know." (Ramona Bradford Dep. 78:1-10.) This evidence is also inadmissible hearsay, and the Court has not considered it in this decision.

. . .
Q. Would you have discussed [availability] with the applicant?
A. No, because it's not really–that's not really up to me. . . . The scheduling, like the exact, you know, days of the week scheduling, I wasn't really in charge of that, anyway.

(Beierle Dep. 21:8-18.)

Wal-Mart also contends that Robin Bradford was not hired because the store was under a hiring freeze. The store manager Ryan Donnell testified that during the "second or third week of October," he was informed by telephone conference call that "every store" was under a hiring freeze. (Donnell Dep. 26:8-11.) The record does not show how long the hiring freeze was in effect.

Robin Bradford then applied for another position in the fitting room area of the same Wal-Mart store. After receiving an initial interview request, Robin arrived at the scheduled interview and reported her arrival to Valerie, the Soft-Lines Manager. However, Robin waited for two hours, was not interviewed, and was not given an explanation.[7]

The EEOC presented evidence showing that Robin Bradford's qualifications and schedule availability met or exceeded those of applicants who began employment with Wal-Mart around the time Robin submitted her employment application. For example, on October 15, 2004, the Wal-Mart store hired Lance Breaux who had a total availability of 49 hours per week. And on November 19, 2004, the Wal-Mart store hired Kathleen Deeschinni, who had a total availability of 48 hours per week. (Resp. ¶¶ CC, DD; Exs. 13-15.) The store manager, Mr. Donnell, and the personnel manager, Ms. Houston, testified that any new employees who started work during the "hiring freeze" must have been given offers of employment contingent on the

_____

[7] Robin Bradford testified that someone told her that the manager was not available for an interview because she was going out to lunch. (Robin Bradford Dep. 32:6-24.) This is inadmissible hearsay, and the Court will not consider it in this decision.

drug test and background check prior to the start of the "hiring freeze." (Donnell Dep. 28:10-29:4; Houston Decl. ¶ 8.) However, Mr. Donnell's testimony concerning the employees who began employment during the hiring freeze was a general response to a hypothetical question:

> Q. If there are hiring records that show hiring decisions made later, in October of '04, like after the first week or even in November of 2004, for your store, what would explain that, given the hiring freeze?
>
> A. The background check and drug test–I mean, we do make an offer to an applicant, and it's a job offer; and of course, it's dependent on their background check and drug test coming back okay. But it's a job offer. And sometimes those background checks can take a long time to come back. I've seen them take as long as five or six weeks. . . . And so we would still have to bring them on-board because we did make them a job offer. However, we would not make any more job offers from that cutoff going forward.

(Donnell Dep. 28:10-29:4.)

### C. JOHN BRADFORD'S APPLICATION FOR EMPLOYMENT AT WAL-MART

On December 28, 2004, John Bradford, Ramona Bradford's adult son, applied for employment at the same Wal-Mart Store. He was interviewed on January 13, 2005 by an hourly Customer Service Manager, Michelle Casaus.[8]  John Bradford testified that he never heard from Wal-Mart concerning this position. (John Bradford Dep. 39:5-13.)  Ms. Casaus testified that she did not know John Bradford was Ramona Bradford's son. (Casaus Dep. 46:16-23.) Wal-Mart

---

[8] Ramona Bradford submitted an affidavit stating that Ms. Casaus told her that her son "had done well" and that another manager, Carolyn Boone, had interviewed John "and that he had done well." (Ramona Bradford Aff. ¶ 4.) Ramona Bradford stated that Ms. Boone told her that "they (Wal-Mart) were going to hire [John] and he would be sent for a drug test." (*Id.*) These statements in Ramona Bradford's affidavit are hearsay and not admissible to support the denial of Wal-Mart's Motion. Therefore, the Court has not considered them in making this decision.

contends that John Bradford was not called in for a second interview because his ORION[9] test score identified him as a "high risk" in his workplace theft attitudes and the store was under a hiring freeze. (Resp. Ex. 18; Donnell Dep. 26: 8-11.)  The EEOC presented evidence that on October 15 and 22, 2004, the Wal-Mart store hired Thomas Harris and Abel Pacheco respectively, both of whom had ORION scores that indicated a "high risk" in their workplace theft attitudes, and both of whom also admitted to stealing small items in previous jobs. (Resp. ¶¶ HH, II.) Again, Mr. Donnell explained that these employees must have been given offers of employment contingent on the drug test and background check prior to the start of the "hiring freeze." (Donnell Dep. 28:10-29:4; Houston Decl. ¶ 8.) Wal-Mart presented no evidence as to whether the hiring freeze was still in effect in December 2004, or if it were in effect, why John Bradford was interviewed despite the hiring freeze.

### D. KNOWLEDGE OF RAMONA BRADFORD'S CHARGE

Wal-Mart contends that only Mr. Donnell and Ms. Houston were aware of Ramona Bradford's EEOC Charge. Wal-Mart asserts that neither Mr. Donnell nor Ms. Houston were involved in the decisions not to hire Ramona Bradford's children. Ramona Bradford testified that it was common knowledge around the store that she had filed an EEOC Charge. (Ramona

---

[9] This test was given to all applicants as part of their on-line application process. Wal-Mart states that the test determines attitudes toward customer service, and other issues such as work- place theft.

Bradford Dep. 41:1-2, Ramona Bradford Aff. ¶ 5.)[10] Ramona Bradford also stated that she was treated differently after her August 2004 Charge. Prior to filing the Charge, Mr. Donnell and other managers were friendly and readily answered her questions. (Ramona Bradford Aff. ¶ 6.) However, after she filed the Charge, members of the management exhibited bad feelings toward her, such as avoiding her, answering her questions in a "snappy" tone, and being "short" with her. (Ramona Bradford Dep. 57:17-25, 59:17-24, 60:11-17.)

E. EEOC CHARGES AND THIS LAWSUIT

On May 10, 2005, Robin and John Bradford filed Charges with the EEOC alleging that Wal-Mart unlawfully retaliated against them in response their mother's Charge of sexual harassment. After the EEOC issued a Letter of Determination notifying Wal-Mart of the EEOC's findings of retaliation, the EEOC filed this lawsuit on behalf of the Bradfords on March 28, 2007. On July 5, 2007, Wal-Mart filed a Motion to Dismiss (Doc. No. 7), and on July 17, 2008, the Court entered a Memorandum Opinion and Order (Doc. No. 27) dismissing the claims asserted on behalf of Robin and John Bradford. The Court ruled that, as a matter of law, third parties may not assert claims that an employer unlawfully retaliated against them based on a closely-related person's protected activity. *See generally, EEOC v. Wal-Mart Stores, Inc.*, 576 F. Supp. 2d 1240, 1246 (D. N.M. 2008).

In 2009, Wal-Mart filed a Motion for Summary Judgment asking the Court to dismiss the

---

[10] Ramona Bradford stated in her affidavit that in late 2004, two of her co-workers Elondra Henderson and Cynthia Aragon, "came up to me and said that they heard I had an attorney, and I responded that I did not have an attorney, but you can go to the EEOC to talk to somebody there if you think you're having a problem." (Ramona Bradford Aff. ¶ 5.) A Wal-Mart assistant manager, named Doug, contacted Ramona Bradford at work and advised her that he had heard about a lawsuit she had against Wal-Mart. (Ramona Bradford Dep. 52:1-7.) Because these statements contain hearsay, the Court has not considered them in this decision.

EEOC's claims on behalf of Ramona Bradford. On September 8, 2009, the Court entered a

Memorandum Opinion and Order (Doc. No. 90) denying Wal-Mart's motion for summary

judgment. In its motion, Wal-Mart argued that Ramona Bradford's claim should be dismissed

because as a matter of law, Wal-Mart's failure to hire Ramona Bradford's children could not

constitute an "adverse employment action" against Ramona Bradford.  Alternatively, Wal-Mart

argued that even if Wal-Mart's failure to hire Robin and John Bradford could be considered an

adverse employment action, there was no causal connection between the decision not to hire

Robin and John Bradford and Ramona Bradford's protected activity. The Court ruled against

Wal-Mart on both of these contentions.

The Court concluded that the failure to hire a person's children can constitute an adverse

employment action because a reasonable person in Ramona Bradford's position "might be

dissuaded from opposing discrimination or filing a charge of discrimination if that person

believed a family member would not be employed." (*Id.* at 9.)  The Court determined that the

EEOC met its burden to establish a *prima facie* case of retaliation on behalf of Ramona

Bradford. In addition, the Court held that the EEOC raised material issues of disputed fact

regarding whether the proffered reasons for not hiring Robin and John Bradford were pretextual

based on evidence 1) that the two persons who knew about Ramona Bradford's charge were in

management positions with authority over hiring at the Wal-Mart store; 2) that although Wal-

Mart claimed that a hiring freeze was in effect at the time, other persons began employment

during the same time period; and 3) neither Robin nor John Bradford was contacted after the first

interview, Robin had been told that she would receive a second interview, but no one contacted

her after her first interview.

### F. ROBIN AND JOHN BRADFORD'S CLAIMS REVIVED AFTER *THOMPSON v. NORTH AMERICAN STAINLESS*

On January 24, 2011, the Supreme Court issued an opinion allowing third party retaliation claims under Title VII. *Thompson v. North American Stainless, LP*, 131 S. Ct. 863 (2011) (Scalia, J.). In *Thompson*, the trial court had granted summary judgment against the claimant, Eric Thompson, who was discharged from his employment with North American Stainless, LP three weeks after his fiancé, also an employee of North American Stainless, LP, filed a charge alleging gender discrimination. *Id.* at 867. The Sixth Circuit Court of Appeals affirmed in an *en banc* decision. On certiorari, the Supreme Court reversed and ruled that Thompson's discharge from employment could be considered unlawful retaliation and that Thompson had standing to assert a claim under Title VII for retaliation based on his fiancé's protected activity. *Id.* The Supreme Court determined that Thompson's discharge from employment could constitute unlawful retaliation because Thompson's discharge could reasonably have dissuaded his fiancé from making or supporting the charge of discrimination if his fiancé knew that Thompson might lose his job as a result. *Id.* at 868 (citing *Burlington N. & S.F.R. Co. v. White*, 548 U.S. 53, 62 (2006)).

The Supreme Court then determined that Thompson had standing to assert a claim of retaliation because he was a "person aggrieved" under Title VII's provision on standing. Under the statutory language, a Title VII action "may be brought . . . by the person claiming to be aggrieved." 42 U.S.C. § 2000e–5(f)(1). The Supreme Court in *Thompson* concluded that a person has standing if he "falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Id.* (citing *Lujan v. National Wildlife Federation*, 497 U.S. 871, 883 (1990)). The Court elaborated on the term

"aggrieved":

> the term "aggrieved" in Title VII incorporates [the zone of interest] test, enabling suit by any plaintiff with an interest "arguably [sought] to be protected by the statutes," . . . while excluding plaintiffs who might technically be injured in an Article III sense but whose interests are unrelated to the statutory prohibitions in Title VII.

*Id.* at 870 (citations omitted).

Applying this test, the Court concluded that Thompson fell within the zone of interests protected by Title VII:

> Thompson was an employee of [North American Stainless, LP], and the purpose of Title VII is to protect employees from their employers' unlawful actions. Moreover, accepting the facts as alleged, Thompson is not an accidental victim of the retaliation—collateral damage, so to speak, of the employer's unlawful act. To the contrary, injuring him was the employer's intended means of harming Regalado [his fiancé]. Hurting him was the unlawful act by which the employer punished her. In those circumstances, we think Thompson well within the zone of interests sought to be protected by Title VII. He is a person aggrieved with standing to sue.

*Id.*

Under the holding in *Thompson*, the Court's July 17, 2008 Memorandum Opinion and Order (Doc. No. 27) no longer reflects the proper standard for third-party standing under Title VII. Consequently, Robin and John Bradford's claims are now viable. *See* Clerk's Minutes re Status Conference held on Feb. 23, 2011 with Magistrate Judge Lorenzo F. Garcia (Doc. No. 125) (discussing *Thompson* and stating that the children's claims "will be revived"). The parties agreed and filed a Notice of Stipulation to Reinstate the Bradford Children's Claims (Doc. No. 143).

DISCUSSION

## A. WAL-MART'S MOTION FOR SUMMARY JUDGMENT ON THE CHILDREN'S CLAIMS

### 1. Standing

In its Motion, Wal-Mart argues that even though some third parties are allowed to sue for

retaliation under *Thompson*, Robin and John Bradford, as applicants for employment, do not have standing to sue Wal-Mart for failing to hire them in retaliation for their mother's protected activity. According to Wal-Mart, third party standing under *Thompson*, should be limited to employees who allege that their employer retaliated against them based on another closely-related employee's protected activity. Wal-Mart essentially asks this Court to limit the *Thompson* ruling to its facts. Under the *Thompson* "zone of interests" test; however, standing to sue under Title VII should be afforded to all persons with interests "arguably [sought] to be protected by [Title VII] . . ." *Id.* at 870.  Title VII protects not only employees but also applicants for employment.  *See* 42 U.S.C. § 2000e-3(a) (stating, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or *applicants* for employment, . . .because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.") (emphasis added)); *Robinson v. Shell Oil Co.*, 519 U.S. 337, 339 (1997) (noting that Title VII protects applicants from employment discrimination). Thus, the Bradford children are persons with interests protected by Title VII. In addition, the *Thompson* Court recognized that Title VII's retaliation provision prohibits a broad range of employer conduct. "Title VII's antiretaliation provision prohibits any employer action that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 868 (quoting *Burlington N. & S.F.R.Co. v. White*, 548 U.S. 53, 68 (2006)). In determining what actions would be prohibited under Title VII, the *Thompson* Court focused on the type of retaliation and the relationship between the person who alleges retaliation and the person who engaged in the protected activity: "[F]iring a close family member will almost always meet the *Burlington* standard, and inflicting a milder reprisal

14

on a mere acquaintance will almost never do so, but beyond that we are reluctant to generalize."
*Id.* The Supreme Court could have but did not announce a blanket limitation that only employees
may sue for retaliation based on another employee's protected activity.

It appears that to date, no Tenth Circuit decision has dealt with the effect of *Thompson*,
and most cases since *Thompson* have involved only employees. But, no court has denied a third-
party claim to a non-employee applicant. Notably, one United States District Court applying
*Thompson* has allowed a third-party to bring a retaliation claim even though the claimant was not
an employee of the retaliating employer. In *McGhee v. Healthcare Services Group, Inc.*, 2011
WL 818662 (N.D. Fla. March 2, 2011), the court denied a motion to dismiss a retaliation claim
brought by a husband who alleged that he was fired in retaliation for his wife's protected
activity. The husband was employed by Healthcare Services Group (Healthcare), which had a
contract with Sovereign Healthcare of Bonifay (Bonifay) as a vendor. The husband's position at
Healthcare was to oversee the cleanliness of the Bonifay facility. The plaintiff's wife was
employed by Bonifay, and in May of 2009 she filed a charge of discrimination alleging that
Bonifay discriminated against her on the basis of her disability. The plaintiff alleged that at the
request of Bonifay, he was terminated by his employer, Healthcare, in retaliation for his wife's
protected activity. *Id.* *1. Bonifay argued that the husband should not have standing under Title
VII because "Plaintiff and his wife were employed by different companies, unlike the Plaintiff in
*Thompson*." The court rejected this argument:

> Although Plaintiff and his wife were employed by different entities, *Thompson* gives no
> indication that this prohibits recovery. Plaintiff's employer was a subcontractor of
> Bonifay, and Plaintiffs [sic] physical workplace was at the Bonifay facility. The two
> employers and their employees are clearly intertwined, and under Plaintiff's version of
> the facts Bonifay used its relationship with Healthcare to retaliate against Plaintiff's wife
> for her protected activity. Allowing employers to induce their subcontractors to fire the
> subcontractor's employees in retaliation for the protected activity of a spouse would

> clearly contravene the purpose of Title VII. It is easy to conclude that a reasonable
> worker might be dissuaded from engaging in protected activity if she knew that her
> husband would be fired by his employer. Therefore, under the test set forth in *Thompson*
> Plaintiff's interests fall within the "zone of interests" of those intended to be protected by
> Title VII. Thus, Plaintiff has stated a plausible claim for relief and dismissal of his
> retaliation claim is not warranted.

*Id.* ** 2-3 (citations omitted). Similarly, allowing Wal-Mart to retaliate against Ramona

Bradford's children who applied for employment would also "clearly contravene the purpose of

Title VII." *Id.* And Ramona Bradford "might be dissuaded from engaging in protected activity"

if she knew that her children would not be hired by Wal-Mart as a result. *Id.* Therefore, Robin

and John Bradford's interests fall within the "zone of interests" of those intended to be protected

by Title VII.

Wal-Mart also argues that the EEOC's Compliance Manual (Manual) supports its

argument that only third-parties who are employees may sue for retaliation.  Section 8 of the

Manual states, "retaliation against a close relative of an individual who opposed discrimination

can be challenged by both the individual who engaged in protected activity and the relative

**where both are employees**." EEOC Compliance Manual § 8-II (B)(3)(c) (May 20, 1998)

(emphasis added). The EEOC counters that this Manual was issued in 1998, long before the

*Thompson* decision and that the Manual was not intended to provide an exhaustive analysis of

third-party claims. As noted by the Supreme Court in *Clackamas Gastroenterology Assoc., P.C.*

*v. Wells*, courts are not required to follow the EEOC's interpretation in its Compliance Manual,

but may refer to the Manual for guidance. 538 U.S. 440, 449 n.9 (2003) (stating that the EEOC

Manual is not controlling, "even though it may constitute a 'body of experience and informed

judgment' to which courts may resort for guidance.") (citing *Skidmore v. Swift & Co.*, 323 U.S.

134, 140 (1944) and *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (holding that

agency interpretations contained in "policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law[,] do not warrant *Chevron*-style deference")). In this case, the Court will decline to rely on the statement "where both are employees" to support a limitation on third party claims in light of the broad interpretation of third party standing from the Supreme Court in *Thompson*.

Wal-Mart next cites *Dellinger v. Science Applications Intern. Corp.*, in which the Fourth Circuit Court of Appeals affirmed the dismissal of a claim brought by an applicant for employment alleging violations of the Fair Labor Standards Act (FLSA). 2011 WL 3528750 (4th Cir. August 12, 2011 ). The plaintiff alleged that the defendant violated the FLSA anti-retaliation provisions by refusing to hire her because she had sued her former employer. The Court held that only employees have standing to sue under the plain language of the FLSA. *Id.* at * 5.  "[W]e cannot overlook the fact that the FLSA was intended at its core to provide minimum wages and maximum hours of work to ensure *employees* a minimum standard of living necessary for 'health, efficiency, and general well-being of workers.'" 29 U.S.C. § 202(a). *Id.* at *4 (emphasis in original). The *Dellinger* case is inapposite because it was brought under the FLSA, which expressly limits its reach to employees. However, Title VII expressly protects job applicants. In addition, the *Dellinger* case did not involve a third-party claim, which is now allowed under *Thompson's* interpretation of Title VII.

The Court concludes that under the *Thompson* standard, Robin and John Bradford have standing to sue for retaliation even if the alleged retaliation is based on their mother's protected activity. Robin and John Bradford, as job applicants, have interests that are expressly protected by Title VII's provisions. Moreover, Wal-Mart's denial of employment to Robin and John Bradford could have been Wal-Mart's "intended means of harming" not only Robin and John

17

Bradford, but also Wal-Mart's employee, Ramona Bradford. *Thompson*, 131 S.Ct. at 870. Hence, Robin and John Bradford are "within the zone of interests sought to be protected by Title VII[,]" and as such, they are "persons aggrieved" with standing to sue for unlawful retaliation. *Id.*

### 2. *Prima Facie* Case, Causation, and Pretext

Wal-Mart argues that the EEOC's claims on behalf of Robin and John Bradford fail for one or more additional reasons. First, Wal-Mart asserts that the EEOC has failed to establish a *prima facie* case of retaliation because there is no evidence that Wal-Mart's decision not to hire the children was in any way causally linked to Ramona Bradford's August 2004 Charge of Discrimination. Second, Wal-Mart contends that it had legitimate, non-retaliatory reasons for not hiring the Bradford children: unavailability (Robin); sub-par ORION test score (John); and a hiring freeze (both). Third, Wal-Mart says the EEOC has not met its burden to produce evidence of pretext.

### a. *Prima Facie* Case

Where there is no direct evidence of retaliation, courts analyze Title VII retaliation claims under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Jeffries v. State of Kansas*, 147 F.3d 1220, 1231 (10th Cir. 1998) (applying the *McDonnell Douglas* framework to a claim of retaliation). Following this framework, a claimant must first present a *prima facie* case of retaliation, which then shifts the burden to the employer to produce a legitimate, non-retaliatory reason for taking the disputed employment action. *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003). If the employer provides a legitimate, non-retaliatory justification for the action, the burden shifts back to the claimant to provide evidence showing that the employer's proffered reason is a pretext for discrimination. *Id.* A claimant may demonstrate pretext by showing the employer's proffered

reason was so inconsistent, implausible, incoherent, or contradictory that it is unworthy of belief. *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1120 (10th Cir. 2001). *See also Vaughn v. Epworth Villa*, 537 F.3d 1147, 1153 (10th Cir. 2008) (stating that proof of pretext requires evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-[retaliatory] reasons.").

In employment retaliation cases, a claimant must establish a *prima facie* case by showing that (1) the claimant "engaged in protected opposition to discrimination"; (2) he "suffered an adverse employment action"; and (3) "there is a causal connection between the protected activity and the adverse employment action." *Faragalla v. Douglas County School Dist. RE 1*, 411 Fed. App'x 140, 147-148 (10th Cir. 2011) (citing *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002)). The burden to establish a *prima facie* case is not onerous. *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005)(noting that the burden at this stage is one of production not of persuasion).  For this third-party retaliation case, Robin and John Bradford have met the first element because although they did not engage in protected activity, they have shown that they are closely related to a person who engaged in protected activity, their mother Ramona Bradford. Robin and John Bradford must also show that they have suffered an adverse employment action, which they contend is established by Wal-Mart's failure to hire them. Finally, Robin and John Bradford must show that there is a causal connection between Ramona Bradford's protected activity and the adverse employment action against Robin and John Bradford.  *Id. See also*, *Thompson*, 131 S. Ct. at 868. A claimant may establish a causal connection between the protected activity and the adverse employment action by proffering evidence of circumstances

19

that justify an inference of retaliatory motive, such as evidence that the protected conduct was closely followed in time by the adverse action. *Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir. 2004) (stating that temporal proximity supports causation).

Wal-Mart asserts that the failure to hire Robin and John Bradford should not constitute an adverse employment action. Wal-Mart argues that it is unlikely that a reasonable person in Ramona Bradford's shoes would be dissuaded from filing a charge of harassment merely because some time in the future a member of her family may apply for employment with Wal-Mart and not be hired in response. First, the Court has already found that the failure to hire Robin and John Bradford might prevent a reasonable person in Ramona Bradford's position from filing a charge of discrimination if that person believed that a family member would not be employed as a result. More importantly, however, the failure to hire Robin and John Bradford is a materially adverse employment action against them, and that is sufficient for purposes of their *prima facie* case.

Wal-Mart next contends that Plaintiff has presented insufficient evidence that the decision not to hire Robin and John Bradford was causally linked to Ramona Bradford's protected activity. In its 2009 MOO denying Wal-Mart's Motion for Summary Judgment on Ramona Bradford's claim of retaliation, the Court outlined several fact issues showing a causal connection between Ramona Bradford's protected activity and Wal-Mart's decision not to hire Robin and John Bradford. Those findings are equally applicable to this Motion, and the Court finds that Robin and John Bradford have met this element as well.

b. Pretext

Even though Wal-Mart has proffered legitimate non-retaliatory reasons for not hiring Robin and John Bradford, the EEOC has presented admissible evidence sufficient to allow a jury

to find that Wal-Mart's proffered reasons for not hiring Robin and John Bradford were pretexts for retaliation. For example, Wal-Mart contends that Robin and John Bradford were not hired because Wal-Mart Store #835 was under a hiring freeze. However, Personnel Manager Rita (Boylan) Vigneau and Mr. Beierle, who interviewed Robin, testified that they did not recall there ever being a hiring freeze at that Wal-Mart store. (Vigneau Dep. 43:14-17; Beierle Dep. 29:1-3.) Moreover, Robin Bradford's application indicated that she was available up to 74 hours per week, which Wal-Mart claims was insufficient "availability." But, on the fall of 2004, two individuals began employment with Wal-Mart even though one individual was available to work only 49 hours per week and the other individual was available to work only 48 hours per week. Wal-Mart's proffered reason for not hiring John Bradford is also suspect because Wal-Mart employed two applicants with equally poor ORION scores and who, unlike John Bradford, had both admitted to stealing items from previous employers.

The Court concludes that the EEOC has presented evidence supporting a *prima facie* case of retaliation on behalf of Robin and John Bradford. In addition, the EEOC has shown by admissible evidence that a jury should decide whether Wal-Mart's proffered reasons for not hiring Robin and John Bradford were pretexts for retaliation.

IT IS ORDERED that DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 140 is denied.

_____

SENIOR UNITED STATES DISTRICT JUDGE